UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE B. for JUDITH F.,[1] <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, Commissioner of Social Security,[2] <br><br> Defendant. | Case No.: 22-cv-1183-MMP <br><br> **ORDER RE JOINT MOTION FOR JUDICIAL REVIEW** <br><br> [ECF No. 24] |

Before the Court is Plaintiff Jane B. ("Plaintiff"), on behalf of her late sister Judith F. ("Claimant"), and the Commissioner of Social Security's ("Commissioner" or "Defendant") (collectively, "the Parties") Joint Motion for Judicial Review. [ECF No. 24.] The Parties have consented to the undersigned for all purposes. [ECF No. 28.]

---

[1] In accordance with Civil Local Rule 7.1(e)(6)(b), the Court refers to all non-government parties by using their first name and last initial.

[2] Martin O'Malley, the current Commissioner of Social Security, is automatically substituted as defendant for Kilolo Kijakazi, the former Acting Commissioner of Social Security, pursuant to Federal Rule of Civil Procedure 25(d).

After a thorough review of the Parties' submissions, the administrative record, and the applicable law, and for the reasons set forth below, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

On February 10, 2020, Claimant filed a Title II application for Disability Insurance Benefits ("DIB"), alleging disability beginning on March 13, 2019. *See* Administrative Record ("AR") 252–55. Claimant alleged that she suffers from bipolar disorder, anxiety disorder, depression, alcoholism, tenosynovitis, arthritis in both hands, degenerative disease, back injury, thyroid disease, limited cognition and loss of short-term memory, sciatica, neuropathy, stenosis, cervicalgia, chronic pain, bulging disc neck and back, bone spurs, plantar fasciitis, stretch tendons right foot, and hammer toes. AR 270. The claim was denied initially on March 16, 2020. AR 159–62. Claimant requested reconsideration on May 19, 2020, which was denied on October 27, 2020. AR 170, 171–75. Claimant filed a written request for a hearing. AR 177–78.

On May 24, 2021, a telephonic hearing was held before Administrative Law Judge ("ALJ") Lisa Lunsford. AR 41. Claimant was represented by counsel and testified at the hearing. *Id.* In a written decision dated July 1, 2021, the ALJ determined that Claimant had not been under a disability, as defined in the Social Security Act, from March 13, 2019, through the date of the ALJ's decision. AR 21–36.

On August 17, 2021, Claimant requested review by the Appeals Council. AR 247–49. The Appeals Council denied review of the ALJ's ruling on June 15, 2022, and the ALJ's decision therefore became the final decision of the Commissioner. AR 1.

On August 12, 2022, Claimant filed the instant action seeking judicial review by federal district court. [ECF No. 1.] On October 24, 2022, Plaintiff Jane B. was substituted as the plaintiff in this case after Claimant's passing. [ECF No. 14.] On April 6, 2023, the Parties timely filed the present Joint Motion. [ECF No. 24.]

//

## II.  SUMMARY OF THE ALJ'S FINDINGS

### A.  The Five-Step Evaluation Process

To qualify for DIB under the Social Security Act, a claimant must show that they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for DIB are evaluated in accordance with a five-step sequential analysis. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine if the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. 20 § C.F.R. 404.1520(b). Second, the ALJ must then determine if the claimant's alleged impairment is sufficiently severe to limit his ability to work. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Third, the ALJ determines whether the claimant's impairments or combination thereof meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If he does, he is disabled. 20 C.F.R. § 404.1520(d). If not, the ALJ then considers the claimant's residual functional capacity ("RFC"), which is used in the analysis at steps four and five. 20 C.F.R. § 404.1520(e). Fourth, the ALJ considers the claimant's past relevant work; if the claimant can do his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) and (f). Finally, if the claimant cannot do his past relevant work, the ALJ assesses the claimant's residual functional capacity, age, education, and work experience to determine if the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). At step five, the claimant will be considered disabled only if he cannot make the adjustment to other work. 20 C.F.R. § 404.1520(g).

The claimant bears the burden of proof in the first four steps of the sequential process. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1512. If the sequential process proceeds to step five, the Commissioner bears the burden of proving the

claimant can make the adjustment to other jobs that exist in sufficient number in the national economy. *Bowen*, 482 U.S. at 146 n.5; *Ford v. Saul*, 950 F.3d 1141, 1148–49 (9th Cir. 2020) (citing *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).

**B.   The ALJ's Application of the Five-Step Process**

The following is a summary of the parts relevant to the issues raised by Plaintiff in the appeal.[3]

At step one, the ALJ found Claimant had not engaged in substantial gainful activity since March 13, 2019, his alleged onset date. AR 24.

At step two, the ALJ found Claimant had medically determinable mental impairments of bipolar disorder and anxiety, but "considered singly and in combination, [they] do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." AR 26. The ALJ found Claimant's right foot plantar fasciitis, degenerative disc disease of the cervical spine, degenerative disease of the lumbar spine, scoliosis, and bilateral lower extremity neuropathy were severe impairments. AR 24.

At step three, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. AR 29 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

The ALJ found Claimant had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), and Claimant "can occasionally climb, balance, stoop, kneel, crouch, and crawl." *Id.*

At step four, the ALJ found Claimant was "capable of performing past relevant work as a funeral salesperson and collection clerk." AR 35 (citing 20 C.F.R. § 404.1565).

---

[3] As discussed in section IV below, Plaintiff only challenges the ALJ's finding that Claimant's mental impairments were not severe. [*See* ECF No. 24.]

1  Accordingly, the ALJ found Claimant had not been under a disability, as defined in the
2  Social Security Act, from March 13, 2019, through the date of the ALJ's decision. *Id.*

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may set aside the Commissioner's benefits only if that decision "was not supported by substantial evidence or is based on legal error." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (citing *Ford*, 950 F.3d at 1153–54). Under the substantial-evidence standard, courts look to the existing administrative record and ask "whether it contains 'sufficient evidence' to support the agency's factual determinations." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). The standard requires "more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Glanden*, 86 F.4th at 843 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).

The substantial evidence standard is "a highly deferential standard of review," *Valentine*, 574 F.3d at 690. When the administrative record is considered as a whole and "'the evidence is susceptible to more than one rational interpretation,' the ALJ's decision must be affirmed." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Andres v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995)). The Court may also reverse the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014).

However, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record 'that the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Id.* at 932 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. DISCUSSION

Plaintiff does not challenge the ALJ's findings as it relates to Claimant's physical impairments. Instead, Plaintiff argues only that the ALJ's determination Claimant did not suffer from a severe mental impairment is not supported by substantial evidence.

Specifically, Plaintiff claims the record does not support the ALJ's finding that Claimant's mental status examinations in 2019 and 2020 were unremarkable, Claimant returned to a "stable baseline with few symptoms" after her hospitalization for her suicide attempt in January 2021, and the state agency medical consultants finding Claimant's mental impairments nonsevere was persuasive. [ECF No. 24 at 4–10.]

Defendant contends that Plaintiff has not established reversible error and the ALJ correctly found Claimant lacked any severe mental impairments. Defendant argues the ALJ supported her nonseverity finding by explaining: "the record was devoid of any significant positive objective clinical or diagnostic findings by medical sources evidencing a functionally limiting mental impairment," "mental-status examinations by Plaintiff's treating medical providers were grossly normal," Claimant "demonstrated capabilities . . . supported her intact mental functioning," "[Claimant's] testimony and longitudinal treatment records indicated that she was able to effectively manage symptoms with treatment of psychotropic medication (Lexapro) and support groups," no physician "opined that Plaintiff had any limitations in mental functioning that would establish a severe mental impairment," and the state medical examiners "concluded that the record did not establish a severe mental impairment." [*Id.* at 10–16 (citations omitted).] Defendant also claims Claimant's subjective allegations are insufficient to establish severity because "the record did not adequately corroborate [Claimant's] subjective allegations." [*Id.* at 15.][4]

The Court considers the Parties' arguments in turn.

**A.  Claimant's Mental Impairments**

    1.  Applicable Law

"Step two inquires whether the claimant had severe impairments during the period for which he seeks disability benefits." *Glanden*, 86 F.4th at 843. "An impairment is not

---

[4] Defendant also argues that neither the diagnoses of mental impairments nor Claimant's suicide attempt are sufficient to establish severity. [ECF No. 24 at 13–14.] Even if correct, Plaintiff is not making that argument. Accordingly, the Court will not address this issue.

severe if it is merely 'a slight abnormality . . . that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting SSR 96-3p, 1996 WL 374181 (July 2, 1996)). The "ability to do basic work activities," in turn, is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). In determining whether a claimant's mental impairment is severe, an ALJ is required to evaluate the degree of mental limitation in the following four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c). If the degree of limitation in these four areas is determined to be mild, a claimant's impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in her ability to perform basic work activities. *See* 20 C.F.R. § 404.1520a(c)–(d).

The purpose of step two's "threshold showing" requirement is "to 'identify[ ] at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account.'" *Glanden*, 86 F.4th at 843 (alteration in original) (quoting *Bowen*, 482 U.S. at 147, 153). "[C]laimants need only make a de minimis showing for the analysis to proceed past [step two] and that properly denying a claim at step two requires an unambiguous record showing only minimal limitations." *Id.* at 844 ("[I]t is relatively rare for an ALJ to deny a claim at step two. . . ."); *see also Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims."); *Ortiz v. Comm'r of Soc. Sec.*, 425 F. App'x 653, 655 (9th Cir. 2011) ("Ample authority cautions against a determination of nondisability at step two.").

Thus, "once a claimant presents evidence of a severe impairment, an ALJ may find an impairment or combination of impairments 'not severe' at step two '*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Glanden*, 86 F.4th at 844 (quoting *Webb*, 433 F.3d at 686) (emphasis in original); *Michael F. v. Kijakazi*, No. 20-cv-00524, 2021 WL 4473176, at *7 (S.D. Cal. Sept. 30, 2021) ("An ALJ's determination that an impairment is non-severe must be

supported by substantial evidence that the medical evidence clearly establishes no severe impairment or combination of impairments") (citing *Webb*, 433 F.3d at 686); *see also* SSR 85-28, 1985 WL 56856 (Jan. 1, 1985) (Step two's purpose "is to do no more than allow [the Commissioner] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working" and a non-severe finding must be "clearly established by medical evidence.") (internal quotations and citation omitted); *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994) ("An overly stringent application of the severity requirement . . . violates the statute by denying benefits to claimants who do meet the statutory definition of disabled.").

If a claimant has submitted evidence of a severe impairment, courts analyze a nonseverity finding by asking "whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Glanden*, 86 F.4th at 844 (quoting *Webb*, 433 F.3d at 687); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) ("Even though a non-severe 'impairment[ ] standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim."). The Ninth Circuit, however, has expressly reiterated that "[a]n inconclusive medical record precludes denial at this step." *Glanden*, 86 F.4th at 844. Rather, if there is doubt about whether an impairment meets the de minimis standard of step-two severity, the issue must be resolved in favor of the claimant. *See Bowen*, 482 U.S. at 141.

Regardless of severity findings for any particular impairments, all of a claimant's impairments must be considered in subsequent steps. *Buck*, 869 F.3d at 1049; *Hutton v. Astrue*, 491 F. App'x 850, 850 (9th Cir. 2012) ("Regardless of its severity, however, the ALJ was still required to consider Hutton's PTSD when he determined Hutton's RFC."). This issue is addressed in section IV(B) below.

/ /

/ /

2. Claimant's Treatment Record

Claimant's record includes medical records from January 2019 through February 2021, addressing her physical and mental impairments. The record contains four visits to the Emergency Department, one of which was the result of her suicide attempt on January 27, 2021.

Prior to her suicide attempt, she attended psychiatry visits every one-to-two months, where she reported varying degrees of sobriety and symptoms. AR 442, 473, 527, 555, 576, 621, 803, 866, 887, 894. On February 3, 2020, Claimant reported to her psychiatrist she "relapsed on alcohol and stopped her meds and now she feels depressed so wants to go back on it." AR 576. On March 2, 2020, she reported she "relapsed on alcohol again and now sober for last 2 wks but reports she is been taking her meds as prescribed and denied any side effects." AR 621. On September 10, 2020, Claimant reported she "relapsed on alcohol again and [was] now sober for last 2 months and attending AA meetings online and wants to go back on meds as she is feeling depressed and anxious." AR 803. On November 10, 2020, Claimant reported to her psychiatrist that she was "doing fine and feels more 'upbeat' and has been sober for 6 wks now. She reports attending AA meeting and have a sponsor too." AR 866. On December 11, 2020 and January 13, 2021, Claimant reported she continued to remain sober and attend AA meetings. AR 887, 894. In each of these visits, Claimant denied suicidal attempt, but her psychiatrist continually cautioned:

> Due to the [history] of self-harm and substance use and also poor coping skills towards the stressors, [patient] remains at chronic risk of harming herself and others, but currently is denying such [suicidal intent/homicidal intent], intent or plan, and also is future oriented and has clear future plans like starting psych meds, getting better, starting working etc.

AR 445, 476, 485, 491, 531, 559, 567, 580, 625.

On January 27, 2021, Claimant was taken to Kern Medical Center's Emergency Department after "taking more than prescribed to her dose of either her antidepressant Lexapro or nerve medication tiagabine, drank 2-3 beers and got on her horse with the

intention of being thrown off and hitting her head with the goal of ending her life." AR 1021. Claimant was subsequently put on a 5150 hold by psychiatry. AR 940.

On April 7, 2021, she returned to her primary care provider, where she reported she "[was] better now" and she attempted suicide "after her current psychiatrist would not prescribe a different medications. . . ." AR 920. Furthermore, she reported having "[l]ittle interest or pleasure in doing things," "[f]eeling down, depressed or hopeless," "[t]rouble falling or staying asleep, or sleeping too much," "[f]eeling tired or having little energy," and "moving or speaking so slowly that other people could have noticed[; o]r the opposite – being so fidgety or restless that you have been moving around a lot more than usual" nearly every day. AR 921.

3. <u>Analysis</u>

The ALJ supports the nonseverity finding with citations to Claimant's medical treatment record and the state agency psychological consultants' determination that Claimant's mental impairments were nonsevere. AR 26–29. For the reasons discussed below, the Court concludes the ALJ's finding that Claimant's mental health impairments were not severe is not supported by substantial evidence. Instead, the record reflects mental impairments sufficient to pass the de minimis threshold of step two.

Plaintiff mainly challenges the ALJ's analysis of the medical record, Claimant's February 22, 2020 functional report, and the State agency medical consultants' findings. The Court considers each in turn.

a. Claimant's Treatment Notes

In her written decision, the ALJ determined Claimant's mental health impairments were not severe because "[t]he claimant's treatment notes show that, generally, her symptoms [were] fairly well managed with conservative treatment and medications including Lexapro; and she [was] often feeling fine." AR 26 (citing AR 363, 442–47). Substantial evidence in the record does not support this finding.

First, the ALJ states Claimant's "mental status examinations were generally unremarkable where she denied suicidal ideation and homicidal ideation and reported she

was 'future oriented and has clear future plans.'" AR 27 (citing AR 485, 488–89, 491, 527–31, 555–56, 559, 563–64, 566–67, 576–77) (records of Claimant's "Medication Management with Psychotherapy" visits). The ALJ's description of Claimant's visit notes omitted the provider's repeated cautions that, although she denied suicidal ideation, "[d]ue to the [history] of self-harm and substance use and also poor coping skills towards the stressors, [patient] remain[ed] at chronic risk of harming herself and others. . . ." AR 445, 476, 485, 491, 531, 559, 567, 580, 625.[5]

The ALJ further stated though "[Claimant] attempted suicide in January of 2021, which would normally support the finding of severe mental impairment, the claimant . . . returned to a stable baseline with few symptoms reported since." AR 28. The ALJ reasoned, because Claimant continued to manage her symptoms with medication, mental health treatment, and Alcoholics Anonymous, Claimant's suicide attempt did not support a finding of severe mental impairments. *Id.* Plaintiff contends "the record does not demonstrate that [Claimant] returned to a 'stable baseline'" and the ALJ's characterization of the records following Claimant's suicide attempt were not accurate. [ECF No. 24 at 6 (quoting AR 28).] While the ALJ found the ceasing of psychiatric medication supported a finding Claimant returned to her "baseline with few symptoms" after her suicide attempt, Plaintiff argues the record "do[es] not indicate that she did so because she was stable." [*Id.* at 6 (citing AR 911)]; *see* AR 28. Instead, Claimant's primary care provider, upon learning "she [had] stopped all her psych meds," "strongly encouraged [her] to reconsider medication and [follow-up] with them." AR 911–13. Furthermore, as discussed above, Claimant reported to her primary care provider after her suicide attempt, which occurred just three months before she ceased psychiatric medication, having little interest in things,

---

[5] Plaintiff argues the treatment notes from Claimant's visits noted mental status examinations were not required "presumably because the appointment was telephonic." [ECF No. 24 at 6.] The Court will not speculate as to why Claimant's mental health providers did or did not conduct mental status examinations.

felling depressed, struggling with sleep, lacking energy, and moving slow or being restless nearly every day. AR 921. In fact, Claimant expressed she attempted suicide precisely because her symptoms were not being effectively managed with medication and she felt as though her psychiatrist was not addressing her concerns. AR 1021 (Emergency Department notes recording Claimant "state[d she] was feeling depressed and constantly reporting her psychiatrist at Omni Clinic but they did not change any medication for her, she started drinking because that was the only thing which was helping her but her depression was getting worse."); AR 920 (Claimant told her primary care provider her suicide attempt "happened after her current psychiatrist would not prescribe a different medications. . . .").

The ALJ also points to mental status examinations performed by Claimant's primary care providers that "were unremarkable [and] show[ed] she was oriented to time, place, person, and situation with appropriate mood and affect." AR 27 (citing AR 421, 452, 458, 482, 497, 506, 515, 586, 597, 608, 656, 812, 1426, 1428). These visits comprised mostly of follow-up visits for Claimant's physical impairments, where Claimant's providers consistently noted she was "[o]riented to time, place, person & situation" and had "[a]ppropriate mood and affect." *See, e.g*, AR 452, 458, 482, 497, 506, 515, 586, 597, 608, 656, 812, 1426. As an initial matter, this does not constitute "medical evidence clearly establish[ing] that [Claimant] did not have a medically severe impairment or combination of impairments." *See Glanden*, 86 F.4th at 844. Further, at issue is Claimant's bipolar disorder, anxiety disorder, depression, and substance use disorder. Although these examinations may be relevant to Claimant's allegations of cognitive impairments,[6] these brief assessments by providers specializing in neither psychology nor psychiatry do not provide substantial evidence to clearly establish Claimant's mood, anxiety, and substance

---

[6] Claimant alleges "[l]imited cognition and loss of short term memory" along with "[b]ipolar disorder," "[a]nxiety disorder," "[d]epression," and "[a]lcoholism." AR 127–28. The Court does not parse out Claimant's mental impairments and makes no finding in regards to the severity of individual impairments. Nor would such a finding be necessary because all impairments must be considered in subsequent steps regardless of their severity.

use disorders were nonsevere. *See Glanden*, 86 F.4th at 845–46 (To find impairments nonsevere, substantial evidence must "support the finding that the record clearly establishes the absence of severe impairments."). In fact, some of these visits occurred shortly before and after Claimant's suicide attempt in January 2021. Even if these records were "grossly normal" as Defendant suggests, these records do not clearly establish Claimant did not have severe mental impairments for purposes of the step two analysis. *See id.*

Furthermore, the record does not provide substantial evidence supporting a finding that Claimant's symptoms were sufficiently well-controlled with medication and treatment such that her mental impairments would be considered not severe. Claimant's earning records demonstrate her last year of substantial gainful employment was in 2015. *See* AR 259–62. In her hearing testimony, Claimant explained she had been working on a ranch to subsidize her rent. AR 69–70. Her testimony suggests it was not a working ranch and she had the opportunity to take a lot of breaks. AR 67–72. Furthermore, Claimant testified the owners "know my limitations." AR 73. In the context of this living arrangement, Claimant's medical record is insufficient to clearly establish her mental impairments were well-controlled and nonsevere. Moreover, the Ninth Circuit has warned "we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." *Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014). Lastly, as discussed above, Claimant explained to her primary care provider she attempted suicide because her symptoms were not well-controlled and her psychiatrist would not change her medications. AR 920; *see also* AR 1021.

In sum, Claimant's "unremarkable" examinations, considered in context of the provider's cautions and Claimant's attempted suicide, do not clearly establish her mental health impairments would only minimally affect her ability to work. Nor does the record support a finding her symptoms were well-controlled with medication and treatment. Further, the inquiry at step two addresses only whether a claimant's record "clearly

establish[es] a slight impairment with no more than a minimal effect on [the claimant's] ability to work." *Glanden*, 86 F.4th at 848. Beyond this de minimis threshold, the degree of severity is not at issue at this stage in the analysis.

### b. February 22, 2020 Functional Report

Second, Plaintiff argues a "complete review of the February 22, 2020 report does not support the ALJ's conclusion. [ECF No. 24 at 7–8.] In concluding Claimant had mild limitations in each of the four broad functional areas, the ALJ found the function report indicated Claimant "ha[d] no problems with personal care," "prepare[d] her own meals, dr[ove] a car, and shop[ped] in stores," could "handle her finances such as paying her bills, counting change, handling a savings account, and using a checkbook or money order," and could "play with cats and dogs, sit outside, watch television, watch horses, and play games on her phone." AR 28. Plaintiff argues the ALJ's characterization of the function report omits Claimant's indications that:

> 1) she need[ed] encouragement to do things because of her mood; 2) she [could not] go out much due to anxiety; 3) she [could not] pay attention; 4) she [got] irritable with family and friends; 5) she [spent] time alone due to social anxiety; 6) she had difficulty following written and spoken instructions due to loss of focus, anxiety, and a wandering mind; 7) she [could not] handle stress; and 8) in general, her mood, anxiety, bipolar, and depression [were] mental obstacles.

[ECF No. 24 at 8 (citing AR 298–306).]

The ALJ's analysis omitted any reference or discussion of these aspects of the function report and thus suggests the ALJ did not consider the limitations Claimant reported experiencing when carrying out the activities listed. AR 28; *see, e.g.*, AR 301 (Claimant indicated she did not "need any special reminders to take care of personal needs and grooming" but also said "sometimes—I don't shower regularly"); *id.* (Claimant indicated she did not "need help or reminders taking medicine" but also stated she "just do[esn't] take it sometimes if [she's] too tired"); *id.* (Claimant indicated she prepared her own meals but "easy things—frozen dinners, cereal & toast" that take "10 minutes or

less"); *id.* (Claimant indicated her "mood keeps me from most things"); AR 302 (Claimant indicated she can go out alone but "get[s] high anxiety"); *id.* (Claimant indicated she goes shopping but "my friend takes me to town on the weekends"); AR 304 ("My anxiety is a distraction," "lose focus or get anxious" when trying to follow directions, and "mind wanders and I hear but can't listen" when trying to follow spoken instructions); AR 305 (Claimant indicated she did not handle stress and changes to routine well and would "get anxious"); AR 306 ("My mood, anxiety, bipolar & depression are a mental obstacle."). Moreover, the ALJ does not cite or discuss any medical records in connection with this analysis, and thus it is unclear whether the ALJ considered Claimant's medical record in finding she had only mild limitations.

For the foregoing reasons, the ALJ's finding of only mild limitations is not supported by substantial evidence; accordingly, it cannot constitute substantial evidence that Claimant did not have any severe mental impairments. *See Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998) (holding an ALJ must not "develop[] his evidentiary basis . . . not fully accounting for the context of materials or all parts of the testimony and reports"); *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018) ("In reviewing the agency's determination, a reviewing court considers the evidence in its entirety, weighing both the evidence that supports and that detracts from the ALJ's conclusion.") (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).

c. State Agency Medical Consultants

Finally, Plaintiff argues ALJ's reliance on the state agency medical consultants' findings that Claimant's mental impairments were nonsevere was misguided because they were adopting the prior ALJ assessment of a nonsevere mental impairment based on the disability analyst recommendation and did not consider records of Claimant's suicide attempt and hospitalization. [ECF No. 24 at 8–9.] In her written opinion, the ALJ explained she found the medical consultants persuasive:

> Their findings are further supported by a reasonable explanation with specific references to the record. Moreover, these consultants reviewed much of the

evidence (through Exhibit B12F). Although subsequent evidence shows a suicide attempt, the claimant did not remain suicidal, and her mood and anxiety symptoms returned to a nonsevere level as indicated by recent treatment notes at Exhibit B14F.

AR 29.

The records the state agency medical consultants reviewed only consisted of medical records in 2019 and 2020; whereas Claimant's suicide attempt occurred in 2021. *See id.* Because the state agency medical consultants did not consider evidence of records of Claimant's suicide attempt and subsequent hospitalization, the medical visit after her hospitalization, and Psychotherapy visits where she speaks about relapsing on alcohol, their findings of nonseverity do not constitute substantial evidence that clearly establishes Claimant's mental impairments only minimally limited her ability to perform work activities for purposes of the step two analysis. *Glanden*, 86 F.4th at 844. Further, as discussed above, substantial evidence does not support the ALJ's finding Claimant's mood and anxiety returned to a nonsevere level following her suicide attempt.

### d. Conclusion

It is apparent from the foregoing medical evidence Claimant's claim of severe mental impairments was not "groundless." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen*, 482 U.S. at 153–43). The record reflects mental problems sufficient to pass the de minimis threshold of step two.

### B. The ALJ's RFC Determination

"The RFC . . . *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Buck*, 869 F.3d at 1049 (emphasis in original) (holding that any error at step two is harmless where "all impairments were taken into account" when the ALJ was configuring the RFC). When determining the RFC, the ALJ must consider the limiting effects of all impairments, including "medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(2); *Carmickle*, 533 F.3d at 1164 ("The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even

those that are not severe."); *Smolen*, 80 F.3d at 1290 (finding that the ALJ incorrectly "failed to consider at step five how the combination of her other impairments—and resulting incapacitating fatigue—affected her residual functional capacity to perform work"). Accordingly, the Ninth Circuit has made clear that, even when an ALJ finds no severe mental impairments, they are required to consider the mental impairments when determining the RFC. *Hutton*, 491 F. App'x at 850; *Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001) (reversing the ALJ's decision because the ALJ "failed to consider whether Edlund's symptoms of depression and anxiety amounted to a listed impairment under Step 3; furthermore, she failed to factor such considerations into her Step 5 analysis regarding Edlund's residual physical and mental capacity to perform other jobs").

Furthermore, the RFC requires a "more detailed assessment" of claimant's impairments than required for paragraph B analysis in step two. SSR 96-8p, 1996 WL 374184 (July 2, 1996) ("The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in [paragraph B] of the adult mental disorders listings. . . ."). "[W]hen a nonsevere impairment is considered 'in combination with limitations imposed by an individual's other impairments, the limitations due to such a [nonsevere] impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do." *Victor R. v. O'Malley*, No. 23-cv-00501, 2024 WL 392616, at *4 (S.D. Cal. Feb. 1, 2024) (quoting *David Allan G. v. Comm'r of Soc. Sec.*, No. 21-cv-00162, 2023 WL 2479921, at *4 (D. Idaho Mar. 10, 2023)). District courts in the Ninth Circuit have held the ALJ's opinion must include an actual consideration of a claimant's mental impairments and boilerplate language that the RFC assessment included all symptoms or incorporates the analysis from step two is insufficient. *See id.* at *5; *Patricia C. v. Saul*, No. 19-cv-00636, 2020 WL 4596757, at *13 (S.D. Cal. Aug. 11, 2020); *Malborg v. Kijakazi*, No. 20-00500, 2021 WL 4750574, at *6 (D. Haw. Oct. 12, 2021); *Barrera v. Berryhill*, No. CV 17-07096, 2018 WL 4216693, at *5 (C.D. Cal. Sept. 5, 2018).

In configuring the RFC, the ALJ stated she "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and "the inconsistencies of the claimant's mental health allegations with the evidence are addressed above." AR 29, 33. Though the ALJ provides a thorough five-page assessment of Claimant's physical impairments, the ALJ provided no more discussion than the preceding statement in relation to Claimant's mental impairments. This discussion is not only based on the analysis the Court finds as not supported by substantial evidence for the reasons discussed above, but it also falls short of the ALJ's required RFC analysis. The ALJ did not properly consider Claimant's mental impairments in the RFC determination, which cannot be "inconsequential" to the ALJ's determination; accordingly, the ALJ's finding Claimant's mental impairments nonsevere was not harmless and remand is necessary.

## V.   CONCLUSION

Based on the foregoing analysis, the Court **REVERSES** the final decision of the Commissioner of Social Security and **REMANDS** the matter for further administrative proceedings with this opinion pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED**.

Dated:  March 27, 2024

HON. MICHELLE M. PETTIT
United States Magistrate Judge